**In re OUTLOOK/CENTURY LTD., a California limited partnership, Debtor.**

**Bankruptcy No. 91–3–0874–TC. No. RS 91–0329–TC.**

United States Bankruptcy Court, N.D. California.

May 13, 1991.

Latham & Watkins, Brad R. Godshall, Gregory M. Pettigrew, Los Angeles, Cal., Latham & Watkins, D.R. Edwards, San Francisco, Cal., for movant New West Fed. Sav. and Loan Ass'n.

George D. Giddens, Jennie Deden Behles, J.D., P.A., Albuquerque, N.M., Craig K. Welch, Welch, Stromsheim & Olrich, San Francisco, Cal., for debtor.

OPINION

THOMAS E. CARLSON, Bankruptcy Judge.

The principal issue raised in this case is whether there is a "new value" exception to the absolute priority rule of section 1129(b)(2)(B) of the Bankruptcy Code. I conclude that no such exception exists. Because Debtor cannot confirm a plan of reorganization unless there is a new value exception, Debtor's motion for use of cash collateral is denied, and secured creditor's motion for relief from the automatic stay is granted.

FACTS

Debtor Outlook Century Ltd. (Debtor) is a limited partnership organized under the laws of California. Its sole asset is an office building in San Jose, California (the Property). Debtor contends that the fair market value of the Property is $11,700,-000. Debtor concedes that it owes $18,-

000,000 to New West Federal Savings and Loan (New West) under a nonrecourse promissory note secured by a deed of trust on the Property. Thus, New West has an unsecured deficiency claim of approximately $6,000,000. There are no other secured creditors. The only other unsecured creditor is Union Bank, which has a claim of $450,000.

Debtor brought a motion to use cash collateral, including $80,000 held in a tenant improvement account. New West objected to Debtor's motion for use of cash collateral and filed its own motion for relief from the automatic stay. New West contends that it is entitled to prevail on both motions because Debtor cannot confirm a plan of reorganization. This is so because New West holds over 90 percent of the total amount of unsecured claims, because it will not consent to any plan of reorganization, because Debtor has insufficient assets to pay unsecured creditors in full, and because Debtor would have no reason to propose a plan in which Debtor was not to retain the Property. Thus, New West argues, any plan Debtor filed would inevitably run afoul of the absolute priority rule of section 1129(b)(2)(B).[1]

Debtor contends that it can confirm a plan of reorganization. Debtor states that it intends to propose a plan under which the Debtor would retain the property without paying unsecured creditors in full, but that the limited partners would make substantial contributions of new cash, and that the plan would therefore be confirmable under the "new value" exception to the absolute priority rule set forth in *Case v. Los Angeles Lumber Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939).

**1.** All statutory references are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise noted.

**2.** The major purpose of Debtor's motion for use of cash collateral was to obtain authority to use $80,000 in a reserve account to complete tenant improvements.

**3.** Under section 506(a), a creditor has a secured claim equal to the lesser of the value of the collateral or the amount of the underlying obligation. To the extent the underlying claim exceeds the value of the collateral, the claim is unsecured. Because Debtor's note is expressly

## DISCUSSION

 New West is entitled both to relief from the automatic stay and to prevent use of its cash collateral if it is clear Debtor will be unable to confirm a plan of reorganization. Debtor acknowledges there is no equity in the Property. Under section 362(d)(2), a secured creditor is entitled to relief from stay with respect to property in which the debtor has no equity, unless that property is "necessary to an effective reorganization." To be necessary to an effective reorganization it is not enough that the property be essential if any reorganization is to be effected. The Debtor must show that the reorganization can actually be achieved within a reasonable period of time. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). If it is clear as a matter of law that Debtor cannot confirm a plan of reorganization, then relief from stay must be granted. *See In re Winters*, 99 B.R. 658, 664 (Bankr.W.D.Pa.1989); *In re Woodridge North Apartments, Ltd.*, 71 B.R. 189 (Bankr.N.D.Cal.1987). The cash collateral motion essentially becomes moot if relief from stay is granted. There would be no reason to permit Debtor to use cash collateral, except to maintain basic operations pending completion of a foreclosure sale.[2]

 Debtor cannot confirm a plan of reorganization consensually under section 1129(a), because New West can block assent by unsecured creditors as a class. New West has an unsecured deficiency claim of approximately $6,000,000.[3] Debt-

nonrecourse, New West would have no enforceable deficiency claim outside of bankruptcy. But for purposes of chapter 11 confirmation, such nonrecourse notes are deemed to be recourse obligations, unless the collateral is to be sold. *See* section 1111(b)(1).

Sale of the collateral is not a realistic option for Debtor, because New West would have the right to credit bid the full amount of its $18,000,000 note at any sale and would inevitably take the Property. *See In re Woodridge North Apartments Ltd.*, 71 B.R. 189 (Bankr.N.D.Cal. 1987).

or concedes it cannot pay this claim in full. Under section 1129(a), Debtor's plan can be confirmed only if the unsecured creditors as a class vote to accept the plan. *See* section 1129(a)(8). A class accepts the plan if creditors constituting a majority in number and two-thirds in amount vote in favor of confirmation. *See* section 1126(c). Thus, a single creditor holding more than one-third of the total amount of unsecured claims can prevent the class from accepting a plan. Because New West holds more than 90 percent of all unsecured claims and clearly intends to vote against Debtor's plan, unsecured creditors will not vote to accept Debtor's plan. Debtor's plan can be confirmed only if it satisfies the standards for "cram down" under section 1129(b).

Under section 1129(b) a plan may be confirmed notwithstanding the rejection of the plan by a class of creditors if the plan is "fair and equitable" with respect to that class. Section 1129(b)(2) specifies the minimum standards that must be met before a plan is fair and equitable with respect to unsecured creditors.

For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . . . .

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

This standard is generally referred to as the absolute priority rule—unsecured creditors have an absolute priority over equity interests to receive all money or property distributed until the unsecured creditors are paid in full.

██ Debtor's plan is not consistent with the absolute priority rule set forth in section 1129(b)(2)(B). First, equity holders are to retain "property" under the plan. Specifically, they retain their partnership interest in the Debtor and the Debtor retains the Property. It does not matter that the Debtor has no equity in the Property. The Supreme Court has squarely rejected the argument that an interest in an insolvent business is not property under section 1129(b)(2)(B)(ii).

We join with the consensus of authority which has rejected this "no value" theory. Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains "property." Whether the value is "present or prospective, for dividends or only for purposes of control" a retained equity interest is a property interest to "which the creditors [are] entitled ... before the stockholders [can] retain it for any purpose whatever." *Northern Pacific R. Co. v. Boyd,* 228 U.S. [482], at 508 [33 S.Ct. 554, 561, 57 L.Ed. 931 (1913)]. Indeed, even in a sole proprietorship, where "going concern" value may be minimal, there may still be some value in the control of the enterprise; obviously, also at issue is the interest in potential future profits of a now-insolvent business. *See SEC v. Canandaigua Enterprises Corp.,* 339 F.2d 14, 21 (CA2 1964) (Friendly, J.). And while the Code itself does not define what "property" means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad. "'[P]roperty' includes both tangible and intangible property." *See* H.R.Rep. No. 95–595, at 413, U.S. Code Cong. & Admin.News 1978, at 6369.

*Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 207–08, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (footnote omitted).

██ Second, the equity holders retain property "on account of" their equity interest in Debtor. Although Debtor's proposed plan provides that the partners will contribute new cash to the Debtor, the partners will not retain their interest in Debtor solely on account of that new contribution. The proposed contribution of capital cannot

be considered a "purchase" in which the partners will receive equity in Debtor wholly independent of their existing partnership interests, because it is not an open market transaction. Other potential investors are not permitted to participate. The "price" for the equity interest in Debtor is fixed by Debtor's plan; there is no opportunity for persons other than the existing partners to overbid.[4] This exclusive right of Debtor's existing partners to obtain equity interests in Debtor itself constitutes property that the partners retain "on account of" their existing interests. *See Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351, 1360 (7th Cir.1990); *In re Lumber Exchange Ltd. Partnership*, 125 B.R. 1000, 1008 (Bankr.D.Minn.1991); *In re Drimmel*, 108 B.R. 284, 289–90 (Bankr.D. Kan.1989).

■ Debtor contends that its plan may be confirmed under the "new value" exception to the absolute priority rule articulated in *Case v. Los Angeles Lumber Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). That case arose under section 77B of the Bankruptcy Act of 1898, as amended (hereinafter the 1898 Act). The reorganization plan at issue provided that all assets of the debtor were to be transferred to a newly formed corporation. Stock in the new corporation would be issued to: (1) new cash investors; (2) old bondholders; and (3) old stockholders. More than 90 percent of both bondholders and stockholders accepted the plan. Appellant bondholders, however, objected to the plan on the basis that old stockholders were receiving a distribution even though the bondholders were not being paid in full. The district court confirmed the plan, finding that the stockholders' contribution to the plan (their contin-

ued participation and familiarity with the business) provided value to the reorganized debtor equal to the new stock the stockholders received.

The Supreme Court reversed. The Court held that section 77B of the 1898 Act required that the plan must both be accepted by creditors and be "fair and equitable." The Court further held that the term fair and equitable had been defined by the courts to embody "the 'familiar rule' that 'the stockholders' interest in the property is subordinate to the rights of creditors; first of secured and then of unsecured creditors.' " *Id.* at 116, 60 S.Ct. at 7. The Court went on to state, however, that "[i]n application of this rule of full or absolute priority this Court recognized certain practical considerations. . . ." *Id.* at 117, 60 S.Ct. at 8. More specifically, the Court stated:

> It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganization of an insolvent debtor. . . . this Court stress[ed] the necessity, at times, of seeking new money "essential to the success of the undertaking" from the old stockholders. Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made. . . .
>
> . . . [W]e believe that to accord "the creditor his full right of priority against the corporate assets" where the debtor is insolvent, the stockholder's participation must be based on a contribution in money or in money's worth, reasonably equivalent in view of all the circum-

---

4. The court is not faced with a situation in which debtor proposes to purchase property of the estate at a true sale conducted pursuant to a liquidating plan. Such a situation does not implicate the new value exception at all, because debtor would not retain or receive property "on account of" its equity interest, if it purchased at a sale that was open to other purchasers and at which the debtor had no advantage. The question presented by such a plan is not whether the absolute priority rule is satisfied, but whether the sale is calculated to yield the largest return for the estate. The court may very well decline to confirm such a plan, however, where unsecured creditors vote to reject and the likely sale proceeds will be insufficient to satisfy unsecured creditors in full. In such circumstances, the court is justified in giving deference to the wishes of unsecured creditors in determining how the assets of the estate should be utilized to pay their claims, since they are the parties with the most direct interest in that question. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

stances to the participation of the stockholder.

*Id.* at 121–22, 60 S.Ct. at 10–11 (footnote omitted). The Court, however, concluded that the plan at issue in *Los Angeles Lumber* was not fair and equitable under this new value standard, because the contribution of the stockholders was not in money or money's worth equal to the value of the shares they retained. *Id.* at 122–131, 60 S.Ct. at 10–15.

Court decisions provide no clear answer as to whether the new value exception of *Los Angeles Lumber* continues to exist under the 1978 Code. The Supreme Court recently stated that the question remained undecided. *Norwest Bank Worthington v. Ahlers, supra.* In *Ahlers,* the Court held that a plan in which debtor promised to provide future labor did not qualify under the new value exception, because the new contribution was not in "money or money's worth." With respect to the validity of the new value exception under the 1978 Code, the Court stated:

> [W]e think it clear that even if the *Los Angeles Lumber* exception to the absolute priority rule has survived enactment of the Bankruptcy Code, this exception does not encompass respondents' promise to contribute their "labor, experience, and expertise" to the reorganized enterprise.
>
> Thus, our decision today should not be taken as any comment on the continuing vitality of the *Los Angeles Lumber* exception—a question which has divided the lower courts since passage of the Code in 1978.

*Id.* 485 U.S. at 203 n. 3, 108 S.Ct. at 967 n. 3.

There is also little guidance from the courts of appeal. The Seventh Circuit recently suggested that there is no new value exception under the 1978 Code, but formally stated that the question remains undecided.

> Whether the "new value exception" to the absolute priority rule survived the codification of that rule in 1978 is a question open in this circuit. *In re Stegall,* 865 F.2d 140, 142 (7th Cir.1989). The language of the Code strongly suggests that it did not, and we are to take this language seriously even when it alters pre–Code practices.

*Kham & Nate's Shoes,* 908 F.2d at 1361 (citations omitted). The Sixth Circuit has applied the new value exception in a Code case, but without any discussion as to whether that exception survived enactment of the 1978 Code. *In re U.S. Truck Co., Inc.,* 800 F.2d 581, 588 (6th Cir.1986).

Bankruptcy courts are divided on the issue. Many decisions state that the new value exception continues to exist under the 1978 Code, but are weak authority because they do not expressly address whether the exception is consistent with the 1978 Code,[5] or because the statements are *dictum.*[6] Only a few bankruptcy courts have actually confirmed plans under the 1978 Code on the basis of the new value exception.[7] The decisions holding that the new value exception continues to exist generally rely on the fact that Congress did not expressly disapprove the new value exception

---

5. *See In re E.I. Parks No. 1 Ltd. Partnership,* 122 B.R. 549, 557–58 (Bankr.W.D.Ark.1990); *In re Yasparro,* 100 B.R. 91, 96 (Bankr.M.D.Fla.1989); *In re Green,* 98 B.R. 981, 982 (9th Cir.BAP 1989); *In re A.G. Consultants Grain Div., Inc.,* 77 B.R. 665, 677–78 (Bankr.N.D.Ind.1987).

6. *See In re Pullman Constr. Industries, Inc.,* 107 B.R. 909, 943–48 (Bankr.N.D.Ill.1989); *In re Johnson,* 101 B.R. 307, 309–10 (Bankr.M.D.Fla. 1989); *In re Yasparro,* 100 B.R. 91, 96 (Bankr.M. D.Fla.1989); *In re Snyder,* 105 B.R. 898, 900–02 (Bankr.C.D.Ill.1989); *In re Green,* 98 B.R. 981, 982 (9th Cir.BAP 1989); *In re A.G. Consultants Grain Div., Inc.,* 77 B.R. 665, 677–78 (Bankr.N. D.Ind.1987); *In re Marston Enterprises, Inc.,* 13 B.R. 514, 517–18 (Bankr.E.D.N.Y.1981).

7. *See In re 222 Liberty Associates,* 108 B.R. 971, 983–84 (Bankr.E.D.Pa.1990); *In re Aztec Co.,* 107 B.R. 585, 588 (Bankr.M.D.Tenn.1989); *In re Greystone III Joint Venture,* 102 B.R. 560, 574–81 (Bankr.W.D.Tex.1989); *In re Henke,* 90 B.R. 451, 455–56 (Bankr.D.Mont.1988); *In re Star City Rebuilders, Inc.,* 62 B.R. 983, 986–89 (Bankr.W.D. Va.1986); *In re Landau Boat Co.,* 13 B.R. 788, 792 (Bankr.W.D.Mo.1981). The *Star City Rebuilders* decision was based on the conclusion that equity holders did not retain "property" in retaining stock of the insolvent debtor corporation. *See* 62 B.R. at 988. The Supreme Court expressly rejected that theory in *Ahlers. See* 485 U.S. at 207–08, 108 S.Ct. at 969–70.

in enacting the 1978 Code,[8] and on the theory that the policy of the Code favors reorganization.[9] A series of more recent decisions holds that the new value exception does not exist under the 1978 Code, on the basis that the plain language of the statute precludes any such exception.[10]

I conclude that any new value exception to the absolute priority rule established in *Los Angeles Lumber* did not survive enactment of the Bankruptcy Reform Act of 1978.

The plain language of section 1129(b)(2)(B) does not permit any new value exception. The statute defines the term "fair and equitable." Moreover, section 1129(b)(2) states clearly that the standards defined in section 1129(b) are the *minimum* requirements for confirmation. *See Lumber Exchange*, 125 B.R. at 1007; *Winters*, 99 B.R. at 663. The statute provides that a plan is fair and equitable with respect to unsecured creditors only if unsecured creditors are paid in full or if all junior classes (subordinated debt and equity) receive nothing. This definition contains no exceptions.

The plain meaning of section 1129(b)(2)(B) must be given effect unless to do so would actively frustrate the purpose of Congress as revealed in unambiguous legislative history.

We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *Accord United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989);

*Board of Governors of the Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 373–74, 106 S.Ct. 681, 688–89, 88 L.Ed.2d 691 (1986); *In re Erickson Partnership*, 856 F.2d 1068, 1069–71 (8th Cir.1988); *In re Barth*, 86 B.R. 146, 149 (Bankr.W.D.Wis.1988).

There is no conflict between the literal language of section 1129(b)(2)(B) and the legislative history of that section. The sponsors of the final version of the bill gave the following explanation of section 1129(b)(2)(B)(ii).

Alternatively, under clause (ii), the court must confirm the plan if the plan provides that holders of any claims or interests junior to the interests of the dissenting class of impaired unsecured claims will not receive any property under the plan on account of such junior claims or interests. As long as senior creditors have not been paid more than in full, and classes of equal claims are being treated so that the dissenting class of impaired unsecured claims is not being discriminated against unfairly, the plan may be confirmed if the impaired class of unsecured claims receives less than 100 cents on the dollar (or nothing at all) as long as no class junior to the dissenting class receives anything at all. Such an impaired dissenting class may not prevent confirmation of a plan by objection merely because a senior class has elected to give up value to a junior class that is higher in priority than the impaired dissenting class of unsecured claims as long as the above safeguards are met.

124 Cong.Rec. 32408 (Sept. 28, 1978). This explanation contains no suggestion that there should be any exception to the absolute priority rule.

One cannot reasonably conclude that Congress intended to incorporate the *Los Angeles Lumber* case into the 1978 Code

---

8. *See, e.g., In re Greystone III Joint Venture*, 102 B.R. 560, 574–75 (Bankr.W.D.Tex.1989); *In re Henke*, 90 B.R. 451, 455 (Bankr.D.Mont.1988).

9. *See, e.g., In re 222 Liberty Associates*, 108 B.R. 971, 983–84 (Bankr.E.D.Pa.1990); *In re Greystone III Joint Venture*, 102 B.R. 560, 574–75 (Bankr.W.D.Tex.1989).

10. *See In re Lumber Exchange Ltd. Partnership*, 125 B.R. 1000 (Bankr.D.Minn.1991); *In re Drimmel*, 108 B.R. 284, 288 (Bankr.D.Kan.1989); *In re Winters*, 99 B.R. 658 (Bankr.W.D.Pa.1989).

through its continued use of the term "fair and equitable." This is so because the statutory context in which the term is used in the 1978 Code differs substantially from the statutory context in which *Los Angeles Lumber* arose.

First, in enacting section 1129(b), Congress replaced the *judicially* created definition of "fair and equitable" from *Los Angeles Lumber* with a *congressionally* created definition of that standard. In doing so, Congress was aware of the *Los Angeles Lumber* decision. Yet Congress adopted a statutory definition that contains no new value exception. This constitutes strong evidence that Congress intended to eliminate the new value exception to the absolute priority rule. *See Kham & Nate's Shoes,* 908 F.2d at 1361; *Lumber Exchange,* 125 B.R. at 1007; *Drimmel,* 108 B.R. at 289.

Second, other provisions of the 1978 Code make a new value exception unnecessary to reach the result envisioned by the Court in *Los Angeles Lumber.* Under the law applicable in that case, a plan could be confirmed only if the plan was fair and equitable *and each class of creditors accepted the plan. See Los Angeles Lumber,* 308 U.S. at 114 n. 6, 60 S.Ct. at 6 n. 6. In that context, the Court construed the requirement that the plan be fair and equitable to include an absolute priority rule subject to the new value exception. Under the 1978 Code, the proponent need not satisfy the new statutorily defined absolute priority rule if each class of unsecured creditors accepts the plan. Any plan that could have been confirmed under *Los Angeles Lumber* can be confirmed under § 1129(a) without resort to any new value exception to the absolute priority rule.[11] Thus, *Los Angeles Lumber* does not support the creation of a new value exception under the current statute, because the decision does not support the proposition that a

plan that does not conform to the absolute priority rule may be confirmed over the dissent of unsecured creditors. To read *Los Angeles Lumber* as supporting a new value under section 1129(b)(2)(B) is to cite the language of the decision without reference to the context in which it arose. *See Kham & Nate's Shoes,* 908 F.2d at 1360–61; *Lumber Exchange,* 125 B.R. at 1007, n. 10; *Winters,* 99 B.R. at 663.

Nor does a literal interpretation of section 1129(b)(2)(B) interfere with any clearly recognized policies of the Bankruptcy Code. Admittedly, not recognizing a new value exception to the absolute priority rule will prevent reorganization in some cases, and it is often said that reorganization is favored. But a literal reading of section 1129(b)(2)(B) will prevent reorganization only in cases in which unsecured creditors do not assent to the plan and the debtor does not propose to pay those creditors in full. In such cases, where the value of a business is insufficient to pay unsecured creditors in full, the debtor has ceased to have any present equity and unsecured creditors have become the real "owners" of the business. *See Kham & Nate's Shoes,* 908 F.2d at 1360.

 Literal application of the absolute priority rule of section 1129(b)(2)(B) recognizes the unsecured creditors as "owners" and accords them the right to determine how the assets of the business will be used to satisfy their claims. If unsecured creditors conclude that the debtor's business has substantial going concern value and that value can be realized only if existing equity continues to participate, those creditors may be willing to allow equity to receive value before unsecured creditors are paid in full to ensure equity's continued participation. *Id.* The 1978 Code permits unsecured creditors to waive the absolute

---

**11.** The legislative history to section 1129(b)(2)(B) states this principle clearly.

> Only when the parties are unable to agree on a proper distribution of the value of the company does the bill establish a financial standard. If the debtor is unable to obtain the consents of all classes of creditors and stockholders, then the court may confirm the

> plan anyway on request of the plan's proponent, if the plan treats the nonconsenting classes fairly....

H.R.Rep. No. 595, 95th Cong., 2d sess. 224, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6184. *Accord* 5 *Collier on Bankruptcy* ¶ 1129.03(e) at 1129–76 (15th ed. 1991).

priority rule to achieve that result. *Id.* If unsecured creditors are unwilling to allow equity to receive any property, because they have determined that liquidation or confirmation of a different plan is in their best interests, section 1129(b)(2)(B) permits creditors to block confirmation of debtor's plan. The new value exception is inconsistent with the principle of creditor control, because it would permit debtor to force a plan of reorganization on creditors who do not believe that the plan is in their best interests and whom debtor does not propose to pay in full.

In *Ahlers,* the Supreme Court endorsed the principle of creditor control that is embodied in a literal reading of section 1129(b)(2)(B).

> The Court of Appeals may well have believed that petitioners or other unsecured creditors would be better off if respondents' reorganization plan was confirmed. *But that determination is for the creditors to make in the manner specified by the Code.* 11 U.S.C. § 1126(c). Here, the principal creditors entitled to vote in the class of unsecured creditors (i.e., petitioners) objected to the proposed reorganization. This was their prerogative under the Code, and courts applying the Code must effectuate their decision.

*Ahlers,* 485 U.S. at 207, 108 S.Ct. at 969 (emphasis added). In light of the *Ahlers* decision, one cannot conclude that the literal language of section 1129(b)(2)(B) is so inconsistent with the policies of the Bankruptcy Code that it should not be given effect.[12]

CONCLUSION

Under proper rules of statutory construction, there is no new value exception to the absolute priority rule of section 1129(b)(2)(B) of the Bankruptcy Code. Because Debtor cannot confirm a plan of reorganization under the absolute priority rule

and has no equity in the Property, New West's motion for relief from the automatic stay is granted and Debtor's motion for use of cash collateral is denied.

---

12. Application of the new value exception poses difficult valuation problems that constitute policy reasons against its adoption. The court need not address that issue, however. In light of the fact that the plain language of the statute contains no new value exception, it is not necessary for those arguing against the new value exception to cite policy reasons against its adoption; it is incumbent on those supporting the new value exception to show that failure to adopt the exception would seriously interfere with Congressionally determined policy.