In re **PUNLABS QUALITY PRODUCTS, LTD., Debtor.**

**BOROKINI INVESTMENT CORPORATION and Oluwafemi Iroh, individually, Movants,**

v.

**PUNLABS QUALITY PRODUCTS, LTD., Respondent.**

**Bankruptcy No. 96–45426–H3–11.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 14, 1996.

R. Vincent Norris, Law Chanbers McGuinnis & Associates, Houston, TX, for Movant.

Winston R. Webster, Houston, TX, for Debtor.

Willard Penn Conrand & Associates, Willard Penn Conrad, Houston, TX, for Intervenor.

## *MEMORANDUM OPINION*

LETITIA Z. CLARK, Chief Judge.

The court has heard the Motion for Emergency Relief from Stay of Borokini Investment Corporation and Oluwafemi Iroh Against Punlabs Quality Products, Ltd. (Docket No. 8) and the Original Petition In Intervention (Docket No. 20) filed by Ebony Pharmaceutical Manufacturing, Inc. and National Commerce Corporation. After considering the pleadings, evidence, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law,

and will enter a separate Judgment wherein the automatic stay will lift. The intervention was allowed. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

### *Findings of Fact*

1. Punlabs Quality Products, Ltd, Debtor, filed its voluntary Chapter 11 petition on June 19, 1996 and currently operates a pharmaceutical manufacturing business that makes generic and over the counter drugs for various wholesale customers. (Docket No. 1; Testimony of Nwangwu).

2. The property made the subject of this motion is real property improved with a non-residential commercial building located at 10960 Stancliff Road, Houston, Texas. The property was originally purchased by Ebony, in 1992 or 1993, at what was represented to be a purchase price of $436,000.00 and subsequently transferred to National Commerce Corporation, ("NCC"). The record is not clear as to how much has actually been paid toward the purchase price, nor the source of those funds. The only evidence on this subject, the testimony of Nwangwu, is neither complete nor credible. (Brief of Debtor In Opposition to Motion for Relief; Testimony of Nwangwu).

3. Debtor and National Commerce Corporation entered into a lease agreement for the property in June, 1994 for a ten year period at $1,000.00 per month. (Movants Exhibit No. 16).

4. In August, 1994, Borokini Investment Corporation, ("Borokini"), made a loan in the amount of $300,000.00 to Ebony Pharmaceutical Corporation, ("Ebony"), which was secured by a deed of trust on the real property owned by National Commerce Corporation. Debtor and Dr. Peter U. Nwangwu were guarantors of Borokini's loan to Ebony. (Testimony of Iroh; Movant's Exhibits 12–14).

5. As part of the loan agreement, Debtor signed a Subordination and Attornment Agreement for the benefit of Borokini where-

in the lease is subordinate to the liens of Borokini. (Movants' Exhibit B; Debtor's Exhibit 15).

6. Peter U. Nwangwu, a doctor of pharmacology, is the President of Debtor, NCC and Ebony. He appears to own 100% of the stock of each, but the record is not clear on this. Borokini Investment Corporation, Inc. is a corporation whose stock is solely owned by Oluwafemi Iroh who is also the President and Secretary of the corporation. (Testimony of Iroh).

7. Ebony defaulted on the loan made by Borokini and since August 1995, no monies have been paid to Movants. (Testimony of Iroh and Nwangwu). On March 5, 1996 Borokini foreclosed upon the property and as the highest bidder, at the sum of $200,000.00, was issued a Substitute Trustee's Deed. (Movant's Exhibit 1A). At the time of foreclosure, the amount owed on the original $300,000.00 loan was approximately $384,143.97 in addition to other sums for unpaid property taxes owing by NCC. (Movants' Exhibit 1A).

8. Debtor failed to vacate the premises and Movants filed a state court suit for forcible detainer, recovery of rents and recovery of premises. (Movants' Exhibit 1). On April 25, 1996, the Justice Court of Harris County, Precinct 5, Place 1 rendered an Order sustaining Movants' request for forcible detainer and ordering Debtor to surrender the premises by May 1, 1996. This Order became a final judgment on May 25, 1996. (Movants' Exhibit 2). Debtor's bankruptcy was filed on June 19, 1996. (Docket No. 1).

9. Ebony and NCC filed an Original Petition In Intervention (Docket No. 20) seeking to intervene in the Movants' Motion for Relief from Stay. At the hearing on the Motion for Relief, the court orally allowed the intervention and participation of Ebony and NCC.

10. Movants filed the present motion on an emergency basis on grounds that Mr. Iroh is in severe financial distress and is in peril of losing his own family's home to foreclosure as a result of his dependence on the quarterly interest income from the $300,000.00 loan and the anticipated repayment of the principal in August, 1996. (Movants' Exhibits 4 through 8; Testimony of Iroh).

11. Debtor has yet to surrender the premises and has failed to pay property taxes since 1992 or to maintain insurance coverage as is required under the terms of the Deed of Trust. (Testimony of Iroh and Nwangwu; Movants' Exhibits 8 through 10, and 14).

12. Iroh agreed to and made arrangements with taxing authorities to pay the taxes in installments. (Movants' Exhibits 4 through 6, and 10). In May 1996, Iroh paid approximately $13,000.00 with approximately another $16,000.00 being owed. (Testimony of Iroh; Movants' Exhibit 10).

13. Iroh was unable to make the second installment of approximately $16,000.00 for the taxes and as a result, a judgment for past due taxes was rendered against Movants. The property was ordered to be sold for unpaid taxes. (Movants' Exhibits 8; Testimony of Iroh).

14. Nwangwu admitted that the taxes were not paid and that he had been served with the tax suit. He claims that he made specific arrangements with the taxing authorities to pay the taxes due; however, upon further examination, he admitted he had only given a proposed schedule of payments and planned to include them in a plan of reorganization. (Testimony of Nwangwu). The court did not find his testimony of intent to pay the taxes credible.

15. As to providing insurance coverage, Debtor has failed to maintain same and also refused to allow an inspection of the property by insurance representatives sent by Iroh. (Movants' Exhibit 9; Testimony of Iroh). Although Nwangwu testified that the building is insured and that he gave the Certificate of Insurance to the United States Trustee, he failed to submit a copy of same into evidence. (Testimony of Nwangwu). Nwangwu was not a credible nor a forthcoming witness. The evidence before the court does not demonstrate insurance coverage on the property.

16. The court takes judicial notice of the Debtor's bankruptcy petition and schedules and notes that assets are valued at $2.271

million and liabilities total $925,145.00. The assets are comprised of the value of the pharmaceutical licenses and certifications, office equipment, manufacturing equipment and accessories, and inventory and raw material. Schedule A, "Real Property", contains no listings of any real property owned by the Debtor. (Schedule A, Docket No. 1). Schedule F, "Creditors Holding Unsecured Nonpriority Claims", includes a contingent claim of $108,000 to NCC for accumulated rent on the building lease from January, 1995 to June, 1996. (Schedule F, Docket No. 1).

17. The court finds Iroh to be a credible witness. Iroh testified, without objection, that Nwangwu told him that Nwangwu "would tie up the property for years" in court. The court finds this an indication of bad faith on the part of Debtor in addressing Debtor's failure to pay rent, and Ebony's failure to pay interest on the loan. (Testimony of Iroh).

18. The court finds that the totality of the actions of Debtor, Ebony and NCC in connection with the subject property (not paying rent or property taxes, not maintaining insurance, failing to allow access in order to have the property insured, failing to vacate the premises and failing to pursue the appeal of the state court forcible detainer suit, among others) in addition to the statement by Nwangwu to Iroh of his intent to tie up the property for years is indicative of delay tactics and abuse of the bankruptcy process.

19. The court finds that the Debtor has not met its burden of proof as to its ability to reorganize. Although Nwangwu testified that there exist some viable contracts in addition to potential proposed contracts, the evidence reflects only three contracts which are presently in effect, those being with the Veterans Administration, Defense Personnel Support Center, and the City of Houston. There was no evidence as to any products sold to or income stream from these institutions or profits generated by Debtor. (Testimony of Nwangwu; Debtor's Exhibits 15 through 20, 22 through 28).

20. The court finds that there was no evidence submitted by Debtor relating to the success of the present contracts nor of Debtor's being able to turn the potential contracts into reality. Dr. Nwangwu's testimony was evasive and grounded in hopes rather than in any solid data.

21. Although Debtor believes the property is worth $500,000.00, Exhibit A to the tax judgment reflects the market value of the property ranging from $229,310.00 for tax year 1994 to $183,000.00 for tax years 1993 through 1995. (Testimony of Nwangwu; Movants' Exhibit 8).

22. Dr. Nwangwu testified that adequate protection could be provided to Movants on the basis that Debtor owned enough assets to provide equity, and Debtor would make some form of periodic payments. (Testimony of Nwangwu). However, the court finds no equity (nor indeed title) in the property in Debtor, and Debtor failed to submit any evidence as to the source of income and/or the amount of any proposed payments.

23. The court finds that Movants have established the Debtor's lack of equity in the property and Debtor has not sustained its burden of proof on all other issues. The automatic stay should be lifted, permitting Movants to pursue whatever remedies are available to them in any available forum.

*Conclusions of Law*

1. Pursuant to Bankruptcy Rule 2018(a), the court may permit any interested entity to intervene generally or with respect to any specified matter.

2. When a creditor seeks relief from stay in order to foreclose on property, the creditor has the burden of establishing the Debtor's lack of equity in the property. The Debtor has the burden of proof on all other issues, including adequate protection, and a necessity of property for an effective reorganization. Absent this evidence, the stay is lifted. 11 U.S.C. § 362(g); *See Matter of Canal Place Ltd. Partnership*, 921 F.2d 569 (5th Cir.1991); *In re Boomgarden*, 780 F.2d 657 (7th Cir.1985).

3. To be necessary to an effective reorganization, it is not enough that the property be essential if any reorganization is to be effected. Instead, the Debtor must show that a reorganization can actually be

achieved within a reasonable period of time. *In re Outlook/Century Ltd.*, 127 B.R. 650 (Bankr.N.D.Cal.1991).

4. The court concludes that the Movants have met their burden in showing that the Debtor has no equity in the property. Further, the Debtor has failed to demonstrate that an effective reorganization is possible.

5. The court concludes further that the Debtor has failed to demonstrate that there is adequate protection to be provided to these creditors.

Based on the foregoing, the court will enter a separate Judgment granting the Motion for Emergency Relief from Stay of Borokini Investment Corporation and Oluwafemi Iroh Against Punlabs Quality Products, Ltd. (Docket No. 8) and allowing Movants to pursue and exercise all of their rights and remedies against the collateral in any available forum.

### JUDGMENT

The court has heard the Motion for Emergency Relief from Stay of Borokini Investment Corporation and Oluwafemi Iroh Against Punlabs Quality Products, Ltd. (Docket No. 8) and pursuant to this Court's Findings of Fact and Conclusions of Law signed this same date, it is

ORDERED that the Motion for Emergency Relief from Stay of Borokini Investment Corporation and Oluwafemi Iroh Against Punlabs Quality Products, Ltd. (Docket No. 8) is granted and it is further

ORDERED that the stay is vacated to permit Borokini Investment Corporation and Oluwafemi Iroh to pursue and exercise all of their rights and remedies against the collateral in any available forum.