### In re EMBASSY ENTERPRISES OF ST. CLOUD, a Minnesota Limited Partnership, Debtor.

#### Bankruptcy No. 3–91–204.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 6, 1991.

Christopher A. Elliott, St. Paul, Minn., for debtors.

Mark J. Kalla, Minneapolis, Minn., for First Trust.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter is before the Court on motion by First Trust National Association (First Trust) for relief from the § 362 stay. Appearances are as noted in the record. The Court, having received evidence, reviewed briefs, and heard oral arguments, and now being fully advised in the matter, makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I.

The Debtor is a limited partnership organized for the purpose of developing and owning, as an investment, a hotel in St. Cloud, Minnesota, known as the Sunwood Inn. First Trust is the Debtor's major creditor regarding the project, under an Indenture of Trust entered with the City of St. Cloud, which, pursuant to a Loan Agreement with the Debtor, approved and caused the issuance of Commercial Development Revenue Refunding Bonds in the principal amount of $7,732,000 for its acquisition, construction, expansion and improvement. The bonds were issued in August, 1987. The Bonds and Loan Agreement are secured in favor of First Trust, pursuant to the Indenture, by a first mortgage, security agreement and fixture financing statement, and assignment of rents covering the project.

The Debtor defaulted on its obligation to First Trust in December, 1989, and on September 24, 1990 a receiver was appointed in connection with a state court mortgage foreclosure action commenced by the Mov-

ant. The receiver has operated the property since September 25, 1990.

On January 24, 1991, the Debtor's general partner, Brutger Equities, Inc., filed an involuntary petition against the Debtor under 11 U.S.C. § 303. The Debtor subsequently consented to an order for relief, which was entered on February 14, 1991. First Trust has now brought this motion for relief from stay on several grounds, including its assertion, pursuant to § 362(d)(2), that the Debtor has no equity in the property and that it is unnecessary to an effective reorganization.[1]

At filing, First Trust was owed approximately $8,420,000. Value of the property securing the obligation, according to the Debtor, is presently $5,000,000. First Trust argues that it will control the unsecured class; that the Debtor cannot likely obtain confirmation of a plan in the case without First Trust's consent; and, that the Debtor is unable or unwilling to propose a plan that First Trust would accept. The Debtor disagrees.

## II.

11 U.S.C. § 1126(c) requires that the affirmative vote of claims totalling at least two-thirds in amount of the allowed claims of a class must be obtained to achieve class acceptance. Evidence, in the light most favorable to the Debtor, reveals this unsecured debt structure at filing of the case:

| | |
|---|---|
| First Trust | $3,400,000 |
| First Am. Nat'l Bk. | 3,200,000 |
| Pacomm | 1,000,000 |
| Trade and Other | 500,000 |
| Total | $8,100,000 |
| | |
| Potential Affirm. Votes | $4,700,000 |
| Req. For Class Accept. | −5,399,000 |
| Shortfall | ( 699,800) |

The calculation, shown above, demonstrates that the Debtor is unable to get unsecured class acceptance in this case, even assuming facts most favorable to the Debtor.[2]

■ 11 U.S.C. § 1129(b)(2)(B) prohibits confirmation of a plan over the rejection of an unsecured class unless either: 1) the holders in the class receive the full allowed amount of their claims; or, 2) the holders of claims or interests junior to the rejecting class do not receive or retain property on account of the junior claims or interests. The proposal, outlined by the Debtor at the hearing, upon which it intends to formulate a plan, could not overcome the *Code* restrictions.

The unsecured creditors would not receive the full amount of their allowed claims under the Debtor's proposal. Furthermore, existing equity holders would be afforded the right to make additional capital contributions and receive "new" equity positions in the reorganized Debtor. The arrangement is prohibited by 11 U.S.C. § 1129(b)(2)(B). *See: In re Lumber Exchange Limited Partnership*, 125 B.R. 1000 (1991).

■ Where there exists no equity in property that is the subject of a motion for relief from stay, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to successfully defend against the motion. The term "effective reorganization" means one that is both legally possible and likely to be achieved within a reasonable time. The degree of sufficiency of the showing that must be made depends on the circumstances of the particular case. Here, the Debtor has made no showing at all.

The Debtor apparently intends to challenge the transaction as a security device, which, according to the Debtor, would leave Pacomm undersecured by the amount of approximately $1,000,000. Additionally, the stated amount of the First American debt is dependent upon further draw on a certain letter of credit in the amount of approximately $400,000.

---

1. Other grounds stated and argued in the motion are: that the Debtor is not engaged in business and does not qualify for relief under Chapter 11, citing, *Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986); that the petition was filed in bad faith; and, that the Movant's interest is not adequately protected.

2. The Pacomm transaction is structured by the parties as a lease of certain personal property.

The Debtor argues that it is too early in the case to burden it with the necessity of making a significant showing, especially since First Trust is in possession and control of the property and is, according to the Debtor, adequately protected. However, a motion for relief from stay under § 362(d)(2) is not based on lack of adequate protection. While the adequate protection status of a moving creditor might, along with other considerations, influence the sufficiency of the showing that need be made in a particular case, it cannot obviate the need for any showing at all. Furthermore, although the order for relief in this case was entered on February 12, 1991, the "involuntary" case was actually a friendly filing by the Debtor's general partner on January 14, 1991. The case is nearly three months old.

First American National Bank joins with the Debtor in arguing that it would be premature to grant the relief requested. Various scenarios are possible, it asserts, for a plan, beneficial to unsecured creditors, to be structured on outside investment that would exclude the equity holders of the Debtor and make confirmation possible over the objection of First Trust.[3]

No evidence was offered at the hearing on whether equity interests in this property are marketable to outside investors. There was mention made of discussions regarding purchase and sale of the property itself during the Fall of 1990, for $4,400,000. But a sale of the *property* would be a two-party matter between First Trust and the Debtor, and the information is not relevant evidence of the availability or likelihood of outside investment to fund a feasible plan of reorganization that would benefit the Debtor's estate.

Historical and current financial circumstances of the Debtor indicate that outside investment which might be substantial enough to effectively reorganize the Debtor and benefit the estate is not likely available. The Debtor has had a history of default since December 1989, and has been in receivership since September 1990. The Debtor and its creditors have had substantial time to explore investor interest and availability. Furthermore, while it is possible that investors might be willing to invest in a financially troubled project such as the Debtor's under appropriate circumstances, there is no apparent reason why investors would be willing to either pay, or assume the obligation to pay, non-trade unsecured creditors.

An investment which provides for payment to unsecured creditors of an insolvent debtor, diminishes the value of the interest received for the investment to the extent that the payment is applied against the negative net worth of the project or enterprise. Accordingly, it would seem that rational investors would pay unsecured creditors of an insolvent debtor only to the extent that the payment would represent an unsecured "going concern" value of the enterprise.

There was no evidence offered regarding any unsecured "going concern" value of the Debtor's project. In fact, there was no evidence offered regarding "going concern" at all. There was testimony that the market is suffering from an over-built hotel market, which suggests that the Debtor's project has no "going concern" value.

In short, there is no apparent reason why outside investors would be willing to make the type of investment in the Debtor that would be required to fund a plan of reorganization which would provide a return to unsecured creditors. Neither the Debtor, nor First American National Bank, has furnished any reason.

The Debtor has failed to make any showing that successful reorganization is likely

---

**3.** This case is distinguishable from *In re Lumber Exchange Limited Partnership, supra,* where the Court held that no plan would likely be confirmable over the objection of the major creditor because the only beneficiaries would be the dissenting minority holders of three percent of a group of substantially similar claims, 97 percent of which were held by the major creditor, and the investors. Here, First Trust does not overwhelm the unsecured class, and, perhaps more importantly, other equal and senior classes having substantial interests in the case might accept and benefit from an outside investor driven plan, if investors could be found. However, it has not been shown that significant outside investment is a realistic possibility in this case..

within a reasonable time, or at all, in this case. Financial circumstances of the Debtor, and the reasonable inferences that can be drawn from them, indicate that reorganization is not reasonably possible without the consent of First Trust. Certainly, none is in prospect. First Trust is entitled to relief from stay to continue foreclosure on the project because the Debtor has no equity in the property and the property is not necessary to an effective reorganization.

Accordingly, IT IS HEREBY ORDERED:

First Trust is granted relief from the § 363 stay to foreclose its mortgage and security interests in the Debtor's project known as the Sunwood Inn in St. Cloud, Minnesota, and the receiver is authorized to perform all of its responsibilities and duties in connection therewith.