**In the Matter of ROUTE 37 BUSINESS PARK ASSOCIATES, a New Jersey General Partnership, Debtor.**

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant,**

v.

**ROUTE 37 BUSINESS PARK ASSOCIATES, Appellee.**

Civ. No. 91–4361 (AET).

United States District Court, D. New Jersey.

Oct. 23, 1992.

Bruce Howard Snyder, Lasser, Hochman, Marcus, Guryan and Kuskin, Roseland, N.J., for appellant.

Marianne Benevenia, Ribis, Graham, Verdon & Curtin, Morristown, N.J., for creditor.

Karen Ann Giannelli, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellee, debtor.

U.S. Trustee, U.S. Trustee's Office, U.S. Dept. of Justice, Newark, N.J.

## AMENDED MEMORANDUM AND ORDER

ANNE E. THOMPSON, District Judge.

Appellant/creditor John Hancock Mutual Life Insurance Company brings this appeal from the bankruptcy court's decision of August 28, 1991 in which Judge Stephen A. Stripp denied Hancock's motion for relief from the automatic stay on proceedings against appellee/debtor Route 37 Business Park Associates.

Debtor is a New Jersey general partnership whose main assets consist of an industrial and commercial park, which generates rental income, and an undeveloped piece of property. Three individuals make up debtor's general partnership. The partnership obtained a $5,700,000.00 non-recourse loan from creditor in January of 1989, secured by a non-recourse first mortgage on the business park. Debtor failed to make several interest and real estate tax payments in 1990, and Hancock began foreclosure proceedings in November of 1990. Debtor filed for Chapter 11 bankruptcy on December 17, 1990, however, staying the foreclosure proceedings. The partnership continues to possess and operate the park.

Creditor claims $5,882,500.01 from the partnership. The park has a book value of $2,368,388.80 and an estimated liquidation value of $2,200,000.00. The parties agree that debtor has no equity in the property and that Hancock's claim is undersecured by $3,682,500.01. Thus the Hancock claim is divided into two claims; a secured claim representing the value of the collateral and an unsecured claim representing the remaining amount owed. 11 U.S.C. § 506(a). The unsecured claim is treated as a recourse claim under 11 U.S.C. § 1111(b)(1)(A). Debtor owes $491,972.00 in unsecured loans to various other creditors: there are no other secured claims against the partnership.

Hancock sought relief from the stay on March 21, 1991. After several hearings, Debtor filed a Plan of Reorganization and a Disclosure Statement on June 28, 1991. This plan divided the creditors into five classes: (1) priority non-tax claims; (2) Hancock's secured claim; (3) the general unsecured claims; (4) Hancock's unsecured claim; and (5) the partners of debtor. The plan calls for Class 2, Hancock's secured claim, to be secured by a $2,200,000.00 mortgage with a 10% interest rate, payable on a 30 year amortization schedule with full and final payment to be made in 10 years. Class 3 and Class 4 creditors, comprising general unsecured and Hancock's unsecured claims, would receive 2.5% of their claims after twelve months and an additional 2.5% of their claims after 24 months, without interest.

The plan also calls for the creation of a New Jersey limited partnership, Newco, whose general partner will be a New Jersey corporation and whose limited partners will be one or more of debtor's current partners. Existing equity in debtor would be canceled and new equity issued to Newco; in return, Newco would make the two scheduled payments of approximately $104,000.00 to the Class 3 and 4 debtors as well as approximately $120,000.00 in professional fees and post-petition property taxes.

The court below held an evidentiary hearing on August 28, 1991, with testimony from appraisers and one of debtor's general partners. Creditor presented several arguments why it was entitled to relief from the stay under 11 U.S.C. § 362(d). The bankruptcy court, however, denied Hancock's motion, and the creditor appealed.

## DISCUSSION

On appeal, this court "may set aside the bankruptcy court's factual findings only if the findings are clearly erroneous. The bankruptcy court's legal conclusions, however, are subject to the district court's plenary review." *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989) (citations omitted).

■■■ § 362(d) provides two bases for relief from the stay of proceedings imposed under § 362(a) when a debtor files for bankruptcy. Relief shall be granted:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The party seeking relief from the stay has the burden of proving that the debtor has no equity in the property. § 362(g)(1). Here, the parties agree that debtor had no equity in the property at issue. The burden then shifts to the debtor to demonstrate that the property is necessary to an effective reorganization. § 362(g)(2).

What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988) (emphasis in original).

The debtor need not demonstrate that its proposed plan of reorganization is confirmable. It is implicit in that test, however, that the proposed plan must avoid statutory flaws that would prohibit confirmation. In addition, the debtor must prove that " 'the things which are to be done after confirmation can be done as a practical matter.' "

*In re Broad Assocs. Ltd. Partnership*, 110 B.R. 632, 636 (Bankr.D.Conn.), *aff'd*, 1990 WL 293699 (D.Conn. July 29, 1990); *see also In re East–West Assocs.*, 106 B.R. 767, 774–75 (S.D.N.Y.1989). Thus, the debtor must establish that the plan is both legally valid and factually possible. While the debtor need not prove that the plan will actually be confirmed, however, neither may the proof be entirely speculative; there must be some evidence that the plan is achievable. *In re Jug End in the Berkshires*, 46 B.R. 892, 902 (Bankr.D.Mass. 1985); *In re Dublin Properties*, 12 B.R. 77, 80 (Bankr.E.D.Pa.1981).

■ In order to be confirmed, the reorganization plan must meet numerous specific standards laid out in 11 U.S.C. § 1129. Thus, on a motion for relief from the stay, a debtor without equity in the property under consideration must demonstrate a reasonable possibility that these requirements will be met. In the instant action, the bankruptcy court did not require the partnership to affirmatively prove that all the provisions were satisfied. Instead, the court below required debtor to address only those provisions to which Hancock had presented a good faith challenge. August 28, 1991 Transcript at 89–90. This court agrees with the approach taken by Judge Stripp as sensible and appropriate.

Hancock raises three grounds on appeal for reversing the bankruptcy court. First, it asserts that debtor improperly split the unsecured creditors into two classes in order to manipulate class voting, thus contravening the requirement of § 1129(a)(10). Second, it claims that debtor's plan runs afoul of the "absolute priority rule" embodied in § 1129(b)(2)(B), and that debtor cannot rely on the "new value exception" to that rule because it was eliminated by the enactment of the 1978 Bankruptcy Code. Finally, Hancock argues that even if the new value exception continues to exist, debtor has failed to satisfy the requirements of that exception.[1]

### 1. *Class division*

■ Under § 1129(a)(10), debtor must demonstrate that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." A class is deemed to have accepted a plan if that plan is approved by class members representing (1) at least two-thirds of the total amount of claims attributable to that class and (2) at least one-half of the total number of claims attributable to that class. 11 U.S.C. § 1126(c). There is no dispute that debtor's proposed plan would impair Classes 3 and 4, the unsecured creditors, and that there are no insiders in either of these classes. There is also no dispute for purposes of this appeal that Hancock would not accept the plan. If all unsecured creditors were placed in one class, Hancock's vote against the plan would guarantee disapproval under § 1126(c), since the amount of Hancock's interest far exceeds the one-third of the total necessary to block acceptance.

■ Hancock argues that the plan impermissibly divides the group of unsecured creditors into two classes for the improper motive of gerrymandering an impaired class which would approve the plan. The designation of classes is governed by 11 U.S.C. § 1122. While dissimilar claims may not be placed in the same class, § 1122(a), the debtor may split similar claimants into different classes. § 1122(b); *Matter of Jersey City Medical Center*, 817 F.2d 1055, 1061 (3d Cir.1987), citing with approval *In re U.S. Truck Co., Inc.*, 800

---

1. Creditor also argued before the bankruptcy court that its interests were not fully protected under 11 U.S.C. § 362(d)(1). The court below found that the property value was increasing and that therefore Hancock was not entitled to relief from the stay. Creditor does not raise this grounds on appeal.

F.2d 581, 587 (6th Cir.1986). "[H]owever, ... the classification of the claims or interests must be reasonable." *Jersey City Medical Center* at 1061. In particular,

"[T]here must be some limit on a debtor's power to classify creditors in such a manner [which would assure that at least one class of impaired creditors will vote for the plan....] .... Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class."

*Id.,* quoting *U.S. Truck* at 586 (editorial changes in original). The debtor must not arbitrarily designate classes. *Jersey City Medical Center* at 1061; *Matter of LeBlanc,* 622 F.2d 872, 879 (5th Cir.1980).

■ Nonetheless, "it remains clear that Congress intended [through § 1122] to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case." *Jersey City Medical Center* at 1060–61; *see U.S. Truck* at 586 (intent to combine "speed and flexibility" with "some ... protection and remedial tools"). If there are identifiable differences between creditors being placed in separate classes, the classification can be acceptable. *U.S. Truck,* 800 F.2d at 587, citing *American United Mut. Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 146, 61 S.Ct. 157, 162, 85 L.Ed. 91 (1940). Thus in *U.S. Truck* the Sixth Circuit upheld the separate classification of similar claimants where one creditor "has a different stake in the future viability of [the debtor] and has alternative means at its disposal for protecting its claim." 800 F.2d at 587. Further, "an unsecured claimholder with unique attributes or interests dissimilar from other unsecured claimholders may be separately classified." *In re Aztec Co.,* 107 B.R. 585, 587 (M.D.Tenn.1989); *see also In re 222 Liberty Assocs.,* 108 B.R. 971, 990 (Bankr.E.D.Pa.1990) (relying in part, however, on *In re Greystone III Joint Venture,* 102 B.R. 560 (Bankr. W.D.Tex.1989), *aff'd,* 127 B.R. 138 (W.D.Tex.1990), *rev'd,* 948 F.2d 134 (5th Cir.1991), *aff'd in part on reh'g,* 948 F.2d 142 (5th Cir.1991)).

Here, debtor argues that there was a rational basis for separating the unsecured portion of Hancock's claim from the remainder of unsecured creditors. First, Hancock's unsecured claim exists solely on the basis of § 1111(b)(1); without this provision, Hancock would not have any recourse against debtor. Thus, debtor reasons, the legal basis for Hancock's claim is distinct from that of the other creditors. Second, relying on *Aztec,* 107 B.R. at 587, debtor argues that Hancock as a § 1111(b)(1) creditor may have the incentive to vote against the plan in order to affect the treatment of its secured claim.

■ Hancock asserts that there can be no legitimate basis for distinguishing between its undersecured claim and the other unsecured creditors, arguing that debtor's motivation was clearly to influence voting. Creditor fails to *prove* that this was debtor's motivation, however, and the partnership has presented a reasonable, independent basis for separate classification. Hancock claims that debtor's true motivation is revealed by the fact that each class of unsecured claimants is treated identically under the plan. However, identical treatment of separate classes does not necessarily invalidate the classification. *See Jersey City Medical Center* 817 F.2d at 1061 (noting with approval the identical treatment of separate classes as an indication that the classification was not "arbitrary").

■ Under the facts of this case, we are skeptical whether the classification proposed by the partnership would pass muster at a confirmation hearing. The plan does present the appearance of classifying claimants purely on the basis of circumventing the requirements of § 1129(a)(10). Nonetheless, the court will not reverse the bankruptcy court on this basis. First, the court below was not faced with a confirmation hearing; the burden of proof in a § 362(d) motion is much more relaxed than the burden at confirmation. Second, Congress intended that bankruptcy courts should have discretion to approve classification plans under § 1122. *Jersey City*

*Medical Center* at 1060–61. Third, the issue before this court is a question of fact: whether the classification stands a reasonable likelihood of satisfying the requirements of § 1129(a)(10). Therefore, we may set aside the conclusion of the bankruptcy court only if that court was in clear error. Under the circumstances of this case, and particularly in light of the bankruptcy court's discretion and the relaxed standards on a motion under § 362(d), we cannot find that the bankruptcy court's finding was clearly erroneous.[2]

### 2. *Validity of "new value" exception*

Hancock argues that the stay should have been lifted because the plan allows principals of the debtor partnership to obtain equity in a reorganized partnership in violation of the "absolute priority rule." Under § 1129(a)(8), a plan cannot be confirmed unless all impaired classes of the claim have accepted the plan. § 1129(b)(1), the so-called "cram-down" provision, provides an exception to that rule, however: a plan which does not meet the requirements of § 1129(a)(8) may still be approved if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired, and has not accepted, the plan." § 1129(b)(2) defines what is "fair and equitable" with regard to different types of classes. Under § 1129(b)(2)(B), a claim is fair and equitable to unsecured classes if they are to receive the full value of their allowed claim, or, alternatively, all junior claims receive no distribution under the plan.

§ 1129(b)(2)(B) codifies the absolute priority rule as developed by the courts prior to the 1978 Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S.Ct. 963, 966, 99 L.Ed.2d 169 (1988).

There is no dispute that debtor's plan does not satisfy the requirements of the absolute priority rule. Class 4, made up of Hancock's unsecured claim, is impaired and would not approve of the plan. Since the plan calls for one or more current partners to gain equity in a reorganized debtor, a junior class will receive property while a more senior class remains impaired. Thus the plan is not "fair and equitable" under § 1129(b)(2)(B)..

In the proceedings below debtor argued that the bankruptcy court should apply the "new value" exception to the absolute priority rule as laid out in *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 121, 60 S.Ct. 1, 10, 84 L.Ed. 110 (1939) *(dicta )*. Defendant argued that the new value exception no longer existed under the 1978 Bankruptcy Code. The lower court, however, held that the new value exception continued to exist, and declined to grant relief from the stay on this basis. Defendant challenges this holding on appeal. Since the holding below was a legal conclusion, we must conduct a plenary review. *J.P. Fyfe*, 891 F.2d at 69.

■ The Supreme Court in *Case* described the new value exception as follows:

> It is, of course, clear that there are circumstances under which stockholders may participate in a plan of reorganiza-

---

**2.** Hancock cites to three cases which might be persuasive if this court were the fact finder in a confirmation hearing, but which are inapplicable to a court in our position. In *In re Lumber Exch. Ltd. Partnership*, 125 B.R. 1000 (Bankr. D.Minn.1991); *aff'd*, 134 B.R. 354 (D.Minn. 1991), *aff'd*, 968 F.2d 647 (8th Cir.1992) the bankruptcy court granted relief from the automatic stay under § 362(d) where a debtor had separately classified a § 1111(b)(1) creditor. The court found that "the separate classification of [creditor's] undersecured claim is a thinly veiled attempt to manipulate the vote to assure acceptance of the plan by an impaired class...." 125 B.R. at 1006. However, that court was in the role of a fact finder. This court, on the other hand, is in the position of reviewing findings of fact on a "clearly errone-

ous" standard. In *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310 (8th Cir. 1987), the Eighth Circuit upheld a decision by the bankruptcy court to deny a debtor's request to reclassify certain creditors under § 1122. Since the circuit court was *upholding* a decision by the fact finder, it was not applying the rigorous "clearly erroneous" standard which we must apply in the instant case. Finally, whereas the Fifth Circuit in *Matter of Greystone III Joint Venture*, 948 F.2d 134 (5th Cir.1991), *aff'd in part on reh'g*, 948 F.2d 142 (5th Cir.1991), reversed the decision of the fact finder to allow a separate classification for a § 1111(b)(1) creditor, that court was examining a confirmation hearing, which has much stricter requirements than a motion under § 362(d).

tion of an insolvent debtor.... [There is a] necessity, at times, of seeking new money "essential to the success of the undertaking" from the old stockholders. Where that necessity exists and the old stockholders make a fresh contribution and receive in return a participation reasonably equivalent to their contribution, no objection can be made.

308 U.S. at 122, 60 S.Ct. at 10. Thus, in order to advance the policy under bankruptcy law of ensuring sufficient capital to successfully reorganize a troubled entity, equity-holders in the debtor are allowed under the exception to infuse new capital and enjoy the benefits (and accompanying risks) of their investment, proportionate to its worth.

Since the enactment of the 1978 Bankruptcy Code, courts have split on the question of whether or not the new value exception survives under the codification of the absolute priority rule. The Supreme Court has specifically declined to rule on the matter, while noting the split in courts. *Ahlers*, 485 U.S. at 203–04 n. 3, 108 S.Ct. at 967 n. 3. Neither the Third Circuit nor the District of New Jersey has addressed the issue.

Several courts have held, as creditor argues here, that the new value exception ceased to exist in the new codification of the bankruptcy laws in 1978. *In re Outlook/Century Ltd.*, 127 B.R. 650, 658 (Bankr.N.D.Cal.1991); *In re Embassy Enterprises of St. Cloud*, 125 B.R. 552, 554 (Bankr.D. Minn.1991); *In re Drimmel*, 108 B.R. 284, 288 (Bankr.D.Kan.1989), *aff'd*, 135 B.R. 410 (D.Kan.1991); *In re Winters*, 99 B.R. 658, 663 (Bankr.W.D.Pa.1989). One court reasoned that the statutory language of § 1129(b)(2)(B) has no provision for exceptions, and that Congress consciously chose not to include the new value exception in its codification of the absolute priority rule. *In re Outlook/Century Ltd.*, 127 B.R. at 657. Further, the Seventh Circuit, while declining to rule on the

issue, has expressed doubt over the continued validity of the exception. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1361 (7th Cir. 1990).[3]

On the other hand, a distinct majority of courts faced with the issue have held that the new value exception continues to exist. Thus, prior to the Supreme Court's opinion in *Ahlers*, virtually every court concluded that the new value exception still applies under the 1978 Bankruptcy Code. The Sixth Circuit applied the new value exception without discussion in *U.S. Truck*, 800 F.2d at 586. *See also In re Potter Material Service, Inc.*, 781 F.2d 99, 101 (7th Cir. 1986) (applying the new value exception). *But see Kham & Nate's Shoes* at 1361 (issue still open in the Seventh Circuit). A majority of bankruptcy courts have also adopted this approach. *See, e.g., In re Future Energy Corp.*, 83 B.R. 470, 497–99 (Bankr.S.D.Ohio 1988); *In re AG Consultants Grain Div.*, 77 B.R. 665, 677 (Bankr. N.D.Ind.1987). Since *Ahlers*, the great weight of authority has continued to support the continued viability of the exception. In an opinion reached eight months after *Ahlers*, the Eighth Circuit applied the new value exception. *In re Blankemeyer*, 861 F.2d 192, 194 (8th Cir.1988) (*per curiam*) (confirming district court holding that the junior class failed to show that they had "contributed something reasonably compensatory and measurable to the reorganization enterprise"). Recently, the Fourth Circuit, conceded, albeit skeptically, the continuing vitality of a "limited" exception. *In re Bryson Properties, XVIII*, 961 F.2d 496, 504–05 (4th Cir.1992) (finding that "even if some limited new capital exception were viable under the Bankruptcy Code, it would not be so expansive as to apply under the facts of this case"); *see also In re Woodscape Ltd. Partnership*, 134 B.R. 165, 171 (Bankr.D.Md.1991); *In re E.I. Parks No. 1 Ltd. Partnership*, 122 B.R. 549, 557 (Bankr.W.D.Ark.1990); *In re*

**3.** The Fifth Circuit vacated part of a recent opinion dealing with the new value exception. After issuing an opinion holding that the exception was no longer available, the court, on rehearing, withdrew that part of the opinion and

expressed no view on the status of the exception. *See Matter of Greystone III Joint Venture*, 948 F.2d 134 (5th Cir.1991), *aff'd in part on reh'g*, 948 F.2d 142 (5th Cir.1991).

*Mortgage Inv. Co. of El Paso, Texas,* 111 B.R. 604, 618–19 (Bankr.W.D.Tex.1990); *In re 222 Liberty Assocs.,* 108 B.R. 971, 983–84 (Bankr.E.D.Pa.1990); *In re Ashton,* 107 B.R. 670, 674 (Bankr.D.N.D.1989); *In re Aztec Co.,* 107 B.R. 585, 588 (Bankr. M.D.Tenn.1989).

Several bankruptcy courts have stated that the language of § 1129(b)(2)(B) permits the new value doctrine. *In re Bryson Properties, XVIII,* 129 B.R. 440, 447 (M.D.N.C.1991); *In re Pullman Constr. Industries, Inc.,* 107 B.R. 909, 945 (Bankr. N.D.Ill.1989); *In re Snyder,* 99 B.R. 885, 888 (Bankr.C.D.Ill.1989), *aff'd,* 144 B.R. 393 (C.D.Ill.1990); *see also* Nimmer, *Negotiated Bankruptcy Reorganization Plans: Absolute Priority and New Value Contributions,* 36 Emory L.J. 1009, 1051. The section states that "the holder of any claim or interest that is junior to the claims of [a senior impaired class of unsecured creditors] will not receive or retain under the plan *on account of such junior claim or interest* any property." A junior claimant who contributes additional capital as part of a reorganization plan, however, is not obtaining property *on account* of his junior claim. Instead, the junior claimant is obtaining equity in the reorganized debtor on account of the new infusion of capital. Thus, the new value exception is not inconsistent with the language utilized in the codification of the absolute priority rule.

Arguing along similar lines, one court has reasoned that the "new value exception" is not an exception at all, but rather "an independent act which is not *per se* a violation of the absolute priority rule." *Woodscape,* 134 B.R. at 173. The court explained,

> an infusion of new value does not constitute a distribution of property values of the estate to unsecured creditors before equity interest holders. A new contribution must be *independently justified* as adequate, and there is thus no need for an exception to the absolute priority rule. There is only a need, particularly where the contribution is from holders of equity interests in an insolvent entity that would otherwise be extinguished, to be assured that the new value is real, *i.e.* "a

> contribution in money or in money's worth, reasonably equivalent in view of all the circumstances to the participation of the stockholder."

*Id.* (emphasis added), citing *Case,* 308 U.S. at 122, 60 S.Ct. at 10.

In *222 Liberty Assocs.,* the court observed several policy reasons in favor of continuing the new value exception. The court cited with approval a commentary which opined that elimination of the exception could increase the number of conversions from Chapter 11 to Chapter 7 proceedings, thereby decreasing payments to unsecured creditors. 108 B.R. at 984, citing D. Grimes, *Is New Capital Contribution Exception Still a Viable Rule?,* Bankr. Strategist, Vol. VIII, No. 12 at 4, 7 (Nov. 1989). In addition, the court in *222 Liberty Assocs.* stressed that the exception "serves the narrow purpose of affording the debtor the capital necessary to survive." *Id.* We note that this furthers a broader policy aim of the bankruptcy code to encourage reorganization.

■ This court concurs with the overwhelming majority of courts that the new value exception continues to exist. We agree with the reasoning adopted by the bankruptcy courts in *Bryson, Pullman,* and *Snyder,* as originally suggested by Professor Nimmer, that a contribution of capital under the new value exception does not result in the distribution of property to a junior claimant *on account* of his junior claim, but rather on account of the capital contribution. Thus, this court concludes that § 1129(b)(2)(B) does not forbid the new value exception. Under well-established rules for interpreting statutory language, Congress is deemed to adopt judicial interpretations of prior statutes when enacting a new version of the statute. "[I]f Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986). Thus, since there is no language to the contrary in § 1129, Congress must

have intended for its codification of the absolute priority rule to include the new value exception.[4] *See Pullman*, 107 B.R. at 946. Accordingly, we hold that the court below did not err in concluding that the new value exception continues to apply under the current bankruptcy code.

### 3. *Application of the new value exception*

■ Hancock argues that debtor's proposed reorganization plan does not meet the requirements of the new value exception. The capital contribution of the junior claimant must be reasonably equivalent to the amount of equity which that claimant will receive under the plan. *Case*, 308 U.S. at 122, 60 S.Ct. at 10. The debtor should not be allowed to place himself " 'in the position of a mortgagor buying at his own sale.' " *Id.* Hancock argues that the plan calls for the partners of the debtor to erase over $4,000,000 worth of debt by expending approximately $300,000 over two years. Creditor further asserts that the plan does not specify where that $300,000 will come from, and suggests that the partners would rely on rental income from the property. Thus the partners would not contribute any of their own capital. The plan, Hancock argues, in reality provides for the type of "intangible, inalienable, and in all likelihood, unenforceable" commitments from the partners which was held by the Supreme Court in *Ahlers* to be inadequate under the new value exception.

Debtor counters that the plan meets the requirements laid out in *Case*. The partnership argues that $100,000 in capital up front, as augmented by two additional payments of $100,000, is a contribution of capital (1) in money or money's worth, (2) essential to the success of the reorganization, and (3) reasonably equivalent in value to the interest obtained by way of the capital contribution.

Once again, this court finds it unlikely that the plan will ultimately satisfy the requirements of the new value exception at a confirmation hearing. However, our review on this issue of fact is limited to determining whether the bankruptcy court was clearly erroneous in finding that the proposed plan has "a reasonable possibility of a successful reorganization within a reasonable time." Under this standard, we cannot find that the court below was clearly erroneous.

### CONCLUSION

After considering the arguments presented by appellant and appellee, as well as the record below, this court affirms the decision of the bankruptcy court. We find that the bankruptcy court did not erroneously conclude that debtor's plan has a "reasonable possibility of a successful reorganization within a reasonable time." It was not clearly erroneous to find that the division of unsecured creditors into two classes was reasonably likely to meet the requirements of § 1129(a)(10). Further, the court below correctly held that the new value exception to the absolute priority rule remains valid after enactment of the 1978 Bankruptcy Code. Finally, it was not clearly erroneous for the bankruptcy court to find that the reorganization plan was reasonably likely to satisfy the new value exception to the absolute priority rule.

It is therefore on this 22nd day of October, 1992,

ORDERED that the appeal by John Hancock Mutual Life Insurance Company from the decision of the bankruptcy court which denied relief under 11 U.S.C. § 362(d) from the automatic stay is hereby denied, and the decision of the court below is hereby affirmed.

---

**4.** This analysis of the intent of Congress when it enacted § 1129(b)(2)(B) makes sense in light of the "necessity" at times of having equity-holders invest new money. *Case*, 308 U.S. at 121, 60 S.Ct. at 10. While the Supreme Court in *Ahlers* stated that its opinion was not an endorsement of one position or the other, the absolute priority rule includes as part of its genesis the requirement that reorganization plans be "fair and equitable." 485 U.S. at 202, 108 S.Ct. at 966. In light of the strong policy in favor of reorganization and the necessity at times for new capital from equity-holders in the debtor, it is only "fair and equitable" that prior equity-holders receive new equity in any reinvestment which they make on reorganization.