In re **MOONRAKER ASSOCIATES, LTD.,** Debtor.

**CONDOR ONE, INC.,** Movant,

v.

**MOONRAKER ASSOCIATES, LTD.,** Respondent.

Bankruptcy No. A95–71219–REB.

United States Bankruptcy Court,
N.D. Georgia.
Atlanta Division.

Sept. 18, 1996.

Sarah Robinson Borders, King & Spalding, Atlanta, GA, for Movant.

John A. Christy, Schreeder, Wheeler & Flint, Atlanta, GA, for Respondent.

## ORDER DENYING MOTION OF CONDOR ONE, INC. FOR RELIEF FROM AUTOMATIC STAY AND MOTION TO TERMINATE EXCLUSIVITY, AND GRANTING DEBTOR'S MOTION TO EXTEND EXCLUSIVITY

ROBERT E. BRIZENDINE, Bankruptcy Judge.

Before the Court are several related matters as follows: the motion of Condor One, Inc. ("Condor") for relief from the automatic stay, or in the alternative, for adequate protection; Condor's motion to terminate exclusivity; and Debtor's motion to extend exclusivity under 11 U.S.C. § 1121(d). These issues form an integral part of the Debtor's reorganization efforts and constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), (L), and (O). Based upon the reasoning hereinbelow, the Court will deny the motions of Condor and will grant Debtor's motion.

The parties have stipulated to the following facts. Debtor commenced the above-styled case on August 15, 1995 and its principal asset consists of a 428 unit apartment complex known as the Villages at Moonraker Apartments located in Marietta, Georgia (the "Property"). Condor holds a first priority security lien in and to the Property and filed a proof of claim in the amount of $18,322,-045.46. Debtor has objected to this claim. Provided that Condor's claim is greater than

$15,000,000, Debtor has no equity in the Property. The parties agree that the Property does not generate sufficient revenues to pay Condor's claim in full on any reasonable basis, although Debtor contends this statement is true only in the absence of a new value plan as discussed hereinafter. Condor and the Debtor further stipulate that the Property cannot be sold for an amount sufficient to pay Condor's claim in full.

Subsequent to Condor's motion for relief from automatic stay, Debtor filed its Plan of Reorganization and Disclosure Statement on February 21, 1996 within the period of exclusivity as provided in 11 U.S.C. § 1121(b). Debtor's plan basically provides that the interests of the Debtor's existing limited partners and general partner will be cancelled and these partners will be granted an exclusive first option to purchase new interests in the reorganized debtor through the contribution of capital.[1] Debtor's plan separately classifies Condor's secured claim in Class IV and its unsecured claim in Class V and said claims are the only claims in these classes. With the exception of the unsecured claim of Condor, the plan proposes to pay all other allowed claims of unsecured creditors (Class II(A) and II(B)) in full over time without interest.

In its brief in support of its motion for relief from automatic stay, Condor contends that the "new value exception" on which the Debtor's plan relies does not exist under the Bankruptcy Code and, in any event, the exclusive purchase right granted to Debtor's existing partners under Debtor's plan violates the absolute priority rule of 11 U.S.C.

§ 1129(b)(2)(B)(ii).[2] Condor also filed a motion to terminate Debtor's period of exclusivity under Section 1121(b) and (d) in order to file a competing plan. Through its plan, Condor proposes to create a market for the equity of the reorganized Debtor and establish whether Debtor's partners are paying reasonably equivalent value for the new equity contemplated under Debtor's plan. Debtor subsequently filed a motion to extend the exclusive period in which to obtain acceptance and confirmation of its plan.[3]

■ This Court has considered the briefs and oral argument of counsel and has also reviewed the Order recently entered by Judge W. Homer Drake, Jr. *See In re Homestead Partners, Ltd.,* 197 B.R. 706 (Bankr.N.D.Ga.1996).[4] Judge Drake's Order addresses issues comparable to those presented for determination herein. With respect to issues concerning the viability of "new value" and its relationship to the absolute priority rule, this Court is in agreement with the reasoning and conclusion set forth therein. Specifically, this Court similarly concludes, consistent with congressional intent, that a "new value" plan is neither an exception to nor prohibited by Section 1129(b)(2)(B)(ii), but merely raises the questions of when and under what circumstances such a plan satisfies the requirements of that provision. *See Homestead,* 197 B.R. at 709 n. 2, 713 nn. 6 and 7; *see also Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership),* 2 F.3d 899, 901 n. 1, 906–10 (9th Cir.1993), *cert. granted,* 510 U.S. 1039, 114 S.Ct. 681, 126 L.Ed.2d

1. As used in this Order, the term "exclusivity" may refer to one of either two different meanings, to wit: (1) a debtor's exclusive period for filing a reorganization plan and seeking acceptances under 11 U.S.C. § 1121, and (2) the exclusive purchase option granted to debtor's existing limited and general partners under its plan of reorganization. Such meaning should be evident from the text.

2. Section 1129(b)(2)(B)(ii) provides as follows:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

. . .

(B) With respect to a class of unsecured claims—

. . .

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B)(ii).

3. In this motion, Debtor states that an extension of its exclusivity period for obtaining acceptance of its plan is warranted because of the delay occasioned by Condor's request that the Court address the issue of new value. The exclusivity period for Debtor to obtain confirmation of its plan would have expired on April 22, 1996.

4. Counsel has informed the Court that a motion to alter or amend is currently pending in that case.

648, *motion to vacate judgment denied and case dismissed*, —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *In re SM 104 Limited*, 160 B.R. 202, 221, 223–26 (Bankr.S.D.Fla. 1993); *Penn Mutual Life Ins. Co. v. Woodscape Ltd. Partnership* (*In re Woodscape Ltd. Partnership*), 134 B.R. 165, 168, 173–74 (Bankr.D.Md.1991); Randolph J. Haines, *The True Paternity of Bonner Mall: Equivalent New Value Was Never an Exception* 6–47, 68th Ann. Meeting of Nat'l Conf. of Bankr. Judges (Oct. 6–9, 1994).[5]

■ Essentially, in the present case, this conclusion means that a plan, which does not propose to pay the full present value of a deficiency claim held by an undersecured creditor, may nevertheless be considered "fair and equitable" and may be confirmed under Section 1129(b)(2)(B)(ii) over the objection of the class that includes the deficiency claim, so long as a junior interest holder, such as an existing shareholder or partner, receives or retains nothing under the plan, including any interest in the reorganized debtor, on account of his prior equity position. As observed by Judge Drake, in properly implementing new value and determining the true basis of old equity's proposed ownership of the reorganized debtor, evaluation of necessity and reasonable value is pivotal. Moreover, these familiar concepts are firmly anchored in the language of the Code in Section 1129(b)(2)(B)(ii). *Homestead*, 197 B.R. at 713 n. 7.

■ This Court agrees with the observations of Judge Drake and further believes that participation by existing or old equity through a new value plan is not inconsistent with the reorganization goal of enhancing the value of the estate for the benefit of all interested parties and, in fact, such participation can serve as an important source for such enhanced value. *See generally* Elizabeth Warren, *A Theory of Absolute Priority*, 1991 Ann.Surv.Am.L. 9, 19–21, 27–29 (1991). Even though old equity's motivation may arise primarily by virtue of certain potentially adverse tax consequences, and although a new value plan may be more appealing in the case of an operating business as opposed to a single asset debtor as herein, there is no reason to limit the use of such plans in single asset real estate cases as long as the provisions of the plan meet the confirmation requirements of Chapter 11. Further, this Court finds it significant that Congress recently examined the treatment of single asset cases under the Bankruptcy Code and took no action to restrict the confirmability of new value plans.[6]

■ Based on the foregoing, this Court, as previously indicated, concludes that a new value reorganization is not an exception to the absolute priority rule. Instead, it endures as a long-standing judicial rule designed to prevent old equity from gaining an advantage in purchasing a reorganized debtor at an improper price by reason of its prebankruptcy ownership position. *See generally* Warren at 39–43. Thus, under the standard codified in Section 1129(b)(2)(B)(ii), old equity may purchase ownership and control of the reorganized debtor through a nonconsensual plan of reorganization, subject to

---

5. *See also In re Snyder*, 967 F.2d 1126, 1129–30 (7th Cir.1992); *In re F.A.B. Indus.*, 147 B.R. 763 (C.D.Cal.1992). Some courts either reject this conclusion or at the very least consider new value's current status as questionable. *See e.g. Travelers Ins. Co. v. Bryson Properties, XVIII* (*In re Bryson Properties, XVIII*), 961 F.2d 496 (4th Cir.), *cert. denied*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *Piedmont Assoc. v. Cigna Property & Casualty Ins. Co.*, 132 B.R. 75 (N.D.Ga.1991) (exception questioned but, in any event, inapplicable on facts); *In re A.V.B.I., Inc.*, 143 B.R. 738, 740–41 (Bankr.C.D.Cal.1992); *cf. Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture* (*In re Greystone III Joint Venture*), 995 F.2d 1274, 1282 (1991), *withdrawn in part, reinstated in part on reh'g*, 995 F.2d 1274, 1284 (5th Cir.) (per curiam), *cert. denied*, 506 U.S. 821, 113 S.Ct. 72, 121 L.Ed.2d 37, *and cert. denied*, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992).

6. In 1994, Congress specifically addressed various reorganization issues such as providing for accelerated case administration in "small business cases" with aggregate debt not in excess of $2 million. Further, certain amendments were made concerning single asset real estate cases (definition codified at 11 U.S.C. § 101(51B)), but none of these addressed new value plans. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 217 and 218, 108 Stat. 4106 (1994); *see also* 11 U.S.C. § 362(d)(3) (provision for early relief from stay in single asset real estate cases).

a determination that it has offered maximum value in return for same.[7]

■ This Court will next address Condor's argument that a new value plan that reserves to old equity the exclusive right to purchase control of the reorganized debtor violates Section 1129(b)(2)(B)(ii) and, therefore, requires the termination of the Debtor's period of exclusivity under Section 1121 for purposes of allowing Condor, and possibly others, to file a competing plan of reorganization.[8] In *Homestead Partners,* although the Court did not terminate the Debtor's period of exclusivity, Judge Drake held that a plan that grants a purchase option solely to old equity amounted to a de facto violation of absolute priority. Judge Drake reasoned that a bidding or purchase provision open only to old equity has a debilitating effect upon confirmability because the plan's proponent can never demonstrate that old equity's acquisition or retention of such control was not "on account of" its prior ownership interest in violation of Section 1129. 197 B.R. at 716 & n. 9. In order to remedy this problem, Judge Drake set certain parameters to promote competitive bidding for control of the reorganized debtor. In effect, this ruling requires an auction or some form of competitive bidding in every instance in which the debtor proposes a new value plan. As discussed hereinafter, this Court chooses not to adopt this conclusion. *Homestead Partners,* 197 B.R. at 716. To conclude that a purchase option restricted to old equity is always fatal, in this Court's opinion, is too strict a reading of the requirements of Section 1129(b)(2)(B)(ii).

The Bankruptcy Code provides debtors and existing equity with the opportunity to retain some measure of control while reorganizing the debtor's financial affairs and debt structure under Chapter 11. For instance, though burdened by a fiduciary duty and subject to removal under certain specified situations, the Code places the debtor in control as debtor-in-possession and, initially, it enjoys an exclusive right to pursue confirmation of a plan of reorganization. *See* 11 U.S.C. §§ 1107, 1108, and 1121. Meanwhile, various means are available to creditors for protecting their interests such as seeking a dismissal for bad faith filing. *See e.g. PNC Bank v. Park Forest Dev. Corp. (In re Park Forest Dev. Corp.),* 197 B.R. 388, 393 (Bankr. N.D.Ga.1996). Further, creditors may demand adequate protection (Sections 362(d)(1) & 363(e)), compliance with the "best interests of creditors" test (Section 1129(a)(7)(A)(ii)), and payment of the present value of their secured claims (Section 1129(b)(2)(A)). *Woodscape,* 134 B.R. at 174; Warren at 26–27. Moreover, as demonstrated in this case, creditors may seek a termination of a debtor's period of exclusivity for proposing a reorganization plan so that competing plans for control of the reorganized debtor may be proposed. *Accord SM 104,* 160 B.R. at 227.

■ As mentioned above, the determinative inquiry in relation to any offer to purchase the new equity interest of the reorganized debtor is whether maximum value has been offered to the estate. *Bonner Mall,* 2 F.3d at 911; *SM 104,* 160 B.R. at 226–30; *Woodscape,* 134 B.R. at 174–75; Warren at 33–34. Market discipline and a competitive bidding environment are undoubtedly significant in terms of enforcing proper observance of the absolute priority rule in the context of equity participation. Moreover, creditor bidding in connection with a new value plan may be beneficial in enhancing value and may also appropriately reflect a creditor's bargaining strength relative to other interested parties. *See* Warren at 24–25. At this juncture in this case, however, this Court concludes that an auction or the competitive bidding that could develop through the filing of competing plans would not necessarily advance these

---

7. In accordance with the demands of this provision, the value offered for such ownership must be new, substantial, reasonably equivalent to that received, necessary for an effective reorganization, and it must be offered in the form of money or money's worth. *See Homestead Partners,* 197 B.R. at 713–14; *see also Bonner Mall,* 2 F.3d at 908; *SM 104,* 160 B.R. at 226; *Woodscape,* 134 B.R. at 168.

8. Again, as noted hereinbefore, a debtor's period of exclusivity for filing a plan of reorganization under Section 1121(b) is a different matter from the propriety of a new value plan reserving an exclusive purchase option for old equity.

purposes and could possibly upset the balance of bargaining leverage created by Congress. *See generally Bonner Mall,* 2 F.3d at 911; *Woodscape,* 134 B.R. at 174; *accord SM 104,* 160 B.R. at 227.[9]

Although warranted in some cases, this Court believes that an auction is not the only way to resolve the problems confronted herein. *Accord Homestead,* 197 B.R. at 719 n. 14. Competitive bidding should not be viewed as a cure-all invariably leading to the discovery of "true value," but is better understood as a tool that may be used by a court in reaching its judgment concerning value. As such, its use must be accompanied by careful judicial discretion. For example, not only can creditor bidding in such an environment not be expected to set a true value in every case, but it could, in fact, result in a distortion of such value. A dominant creditor could submit a bid over and above a "reasonable" assessment of the value it actually perceives in the reorganized debtor. Such a bid could effectively displace all other bids and any benefit to be achieved through such competitive bidding in terms of fixing a true value would be virtually nonexistent.

Additionally, if an undersecured creditor was allowed to credit-bid, this "bidding in" could give rise to "roundhousing" whereby an undersecured creditor can bid in excess of its secured claim, up to and including the total amount of both its secured and unsecured claims, confident in the knowledge that substantially all, if not all, of the funds paid for the reorganized debtor would be returned in partial or total satisfaction of its claims. By doing so, such a creditor could appropriate all going-concern value in the debtor to itself and share no infusion of value through the bid price with other creditors. *See Homestead,* 197 B.R. at 719 n. 15; *In re Bjolmes*

*Realty Trust,* 134 B.R. 1000, 1010 n. 22 (Bankr.D.Mass.1991); Warren at 27 n. 46, 32–33; Richard L. Epling, *The New Value Exception: Is There a Practical, Workable Solution?,* 8 BANKR.DEV.J. 335, 343–345 (1991).[10]

In *Homestead,* Judge Drake concluded that allowing old equity the exclusive right to purchase a reorganized debtor amounts to declaring a winner in a one-horse race. 197 B.R. at 716. In turning to the presence of a rival for purposes of determining a "true" winner, however, this Court believes it is important to recognize that the field of potential entrants (or market) is extremely limited. In this case, the two-horse race that would probably occur upon termination of exclusivity is no more likely to produce a real contest than the one-horse race because, if Condor is permitted to credit-bid, the outcome is, practically speaking, already determined before the race even begins. In many situations, this competitive bidding process could not only fail to create a true competition rectifying the perceived evil associated with an untested proposal by old equity for control of the reorganized debtor, but could well work to frustrate the purpose of Chapter 11 reorganization and the policy choices underlying cram down as contemplated by Congress. *Accord Woodscape,* 134 B.R. at 174–75; *see also Bonner Mall,* 2 F.3d at 914–15; *but see Outlook,* 127 B.R. at 658.

On reflection, perhaps the "race" analogy does not quite fit at this stage of this case. Under Chapter 11, the Debtor, at least initially in the view of this Court, should be allowed an attempt to make its way around the track impeded only by the substantial requirements of the Bankruptcy Code and, in so doing, it should not be further burdened with the requirement of outrunning Condor

---

9. *But see Bryson,* 961 F.2d at 504–05; *Piedmont,* 132 B.R. at 79–80; *Homestead Partners,* 197 B.R. at 716; *In re BMW Group I, Ltd.,* 168 B.R. 731, 734–35 (Bankr.W.D.Okla.1994); *In re Ropt Ltd. Partnership,* 152 B.R. 406 (Bankr.D.Mass.1993); *In re Outlook/Century Ltd.,* 127 B.R. 650, 654 n. 4 (Bankr.N.D.Cal.1991); *In re Lumber Exch. Ltd. Partnership,* 125 B.R. 1000, 1008 (Bankr. D.Minn.), *aff'd,* 134 B.R. 354 (D.Minn.1991), *aff'd,* 968 F.2d 647 (8th Cir.1992).

10. *But see Aetna Realty Investors, Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Ven-*

*ture, Ltd.),* 166 B.R. 428, 433 (C.D.Cal.1993); *H & M Parmely Farms v. Farmers Home Admin.,* 127 B.R. 644, 648 (D.S.D.1990). In concluding that a secured creditor's right to credit bid its entire claim may not be taken away, these courts relied upon Section 363(k), which is more properly applied to situations concerning a post-confirmation sale of property as in the case of a liquidating plan. *Cf.* 11 U.S.C. § 1111(b)(1)(B)(ii).

to the finish line. This Court, therefore, concludes that the Debtor, to the exclusion of all others who might wish to compete for control of the reorganized debtor, should at present be given an opportunity to propose and seek confirmation of its new value plan.

Accordingly, it is

**ORDERED** that the motion of Condor One, Inc. for relief from stay is **denied** without prejudice and Condor's motion to terminate exclusivity is also **denied.** It is

**FURTHER ORDERED** that Debtor's motion to extend exclusivity is **granted** and in accordance with 11 U.S.C. § 1121(d), the exclusive period during which Debtor may obtain acceptance of its plan of reorganization is **extended** through and including **December 16, 1996.**

The Clerk is directed to serve a copy of this Order upon Debtor's counsel, counsel for Condor One, Inc., and the United States Trustee.

**IT IS SO ORDERED.**